# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF SOUTH CAROLINA

IN RE:

Scott D. McGregor and
Marcie W. McGregor,

Debtors.

C/A No. 11-00856-DD

Chapter 13

**ORDER**

This matter is before the Court on an Objection to Claim ("Objection") of CSRA Credit Union ("CSRA") filed March 23, 2011 by Scott D. McGregor and Marcie W. McGregor ("Debtors"). CSRA filed a Response to Debtors' Objection on April 22, 2011. A hearing was held May 16, 2011. At the conclusion of the hearing, the Court took the matter under advisement for further consideration. Pursuant to Federal Rule of Civil Procedure 52, which is made applicable to this matter by Federal Rules of Bankruptcy Procedure 7052 and 9014(c), the Court now makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

Debtors filed for chapter 13 relief on February 11, 2011. Schedules I and J show a net monthly income of $2,550.36 and monthly expenses of $2,368.00, yielding disposable income of $182.36 per month. Debtors' Schedule D indicates that their only secured debt is a small debt with Badcock for bedroom furniture and the debt owed to CSRA, which is listed in the amount of $1,836.39. Schedules E and F indicate that Debtors have no priority debt and no unsecured debt.

Debtors filed a previous bankruptcy case, C/A No. 08-05041-jw, on August 21, 2008. That case began as a chapter 13 case, and Debtors' chapter 13 plan was confirmed on January 29, 2009. CSRA filed two proofs of claim in that case, one in the amount of $2,149.21 (claim

#20) and another in the amount of $7,933.36 (claim #21). The $2,149.21 claim was for a credit card and the $7,933.36 claim was secured by a 2003 Ford F150. These obligations were cross-collateralized. William K. Stephenson, the chapter 13 trustee, filed an objection to the $2,149.21 claim of CSRA on March 17, 2009. CSRA did not respond. The Court entered an Order allowing the claim as unsecured without priority on April 23, 2009.[1]

Thereafter, Debtors failed to make plan payments, and their case was dismissed on July 29, 2010. Their case was reopened on September 2, 2010, and Debtors immediately converted to chapter 7 on September 10, 2010. Their chapter 7 case proceeded without incident, and Debtors received a chapter 7 discharge on December 7, 2010. The present chapter 13 case was commenced two months later.

In the present case, CSRA filed a claim for $4,821.85. This amount was apparently calculated by adding the payoff amount at the time of filing for the truck loan ($2,514.30) to the payoff amount for the credit card at the time of filing ($2,307.55). Debtors contend the amount they owe on the F150 is $1,836.39, as they paid $6,096.47 of the original secured claim of $7,933.36 in the previous case. Debtors believe the credit card account was rendered unsecured in the previous case and discharged at the conclusion of that case. CSRA states that the replacement value of the F150 is $12,750 and the trade-in value is $8,550. Kelley Blue Book lists the trade-in value for a similar vehicle in fair condition as $6,725 and in excellent condition as $8,325.

---

[1] The trustee's objection to claim notes that CSRA filed its claim asserting a lien on property of the estate. The objection raises several alternative bases for objecting to the claim, including an absence of documentation, "no valid lien", the property is "valueless", and the property under lien is not property of the estate. Because there was no response to the trustee's objection, the Court entered an Order allowing the claim as general unsecured without a hearing. As a result, the actual basis for the objection is not clear.

## CONCLUSIONS OF LAW

The well-settled general rule is that liens pass through bankruptcy unaffected. *Dewsnup v. Timm*, 502 U.S. 410, 417 (1992); *In re Hamlett*, 322 F.3d 342, 347 (4th Cir. 2003). The provisions of chapter 13 of the Bankruptcy Code permit certain modifications of secured claims, and the terms of a confirmed chapter 13 plan are binding on secured creditors. Debtors contend that the only issue the Court must decide is the res judicata effect of the Order entered by Judge Waites in their prior case. In the absence of certain provisions of the Bankruptcy Code, this might be true. However, because 11 U.S.C. § 348(f) addresses the effect of a conversion to a different chapter of the Bankruptcy Code, the present case requires the Court to determine the effect of the conversion of Debtors' previous bankruptcy case from chapter 13 to chapter 7. An examination of the applicable sections of the Bankruptcy Code, section 348(f)(1) and section 1325(a)(5)(B), and recent relevant case law leads the Court to the proper result. Section 348(f)(1) provides:

> Except as provided in paragraph (2), when a case under chapter 13 of this title is converted to a case under another chapter under this title –
> (A)   property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion;
> (B)   valuations of property and of allowed secured claims in the chapter 13 case shall apply only in a case converted to a case under chapter 11 or 12, but not in a case converted to a case under chapter 7, with allowed secured claims in cases under chapters 11 and 12 reduced to the extent that they have been paid in accordance with the chapter 13 plan; and
> (C)   with respect to cases converted from chapter 13 – (i) the claim of any creditor holding security as of the date of the filing of the petition shall continue to be secured by that security unless the full amount of such claim determined under applicable nonbankruptcy law has been paid in full as of the date of conversion, notwithstanding any valuation or determination of the amount of an allowed secured claim made for the purposes of the case under chapter 13.

Prior to 1994, section 348(f) was unclear regarding the effect of bankruptcy on a creditor's lien following conversion or dismissal. Cases interpreting the section came to widely varying conclusions. In 1994, the Code was amended. Following these amendments, while courts differed somewhat, a majority view ultimately emerged that valuations or determinations regarding the amount of an allowed secured claim survived a conversion to chapter 7. *See In re Jean*, 306 B.R. 708, 716–17 (Bankr. S.D. Fla. 2004) ("[T]his Court holds that 11 U.S.C. § 348(f) is unambiguous and clearly provides that unless the debtor converts in bad faith, the affected creditor and the Chapter 7 trustee are bound by the bankruptcy court's valuation of property in a Chapter 13 plan and any strip-down or strip-off order resulting from that valuation remains binding in the Chapter 7 case."); *In re Cooke*, 169 B.R. 662, 668 (Bankr. W.D. Mo. 1994) (citing numerous cases finding that "liens satisfied in Chapter 13 are not revived upon conversion to a Chapter 7"). However, in 2005, Congress again amended section 348(f) and added a phrase which reverses this majority view-"but not in a case converted to a case under chapter 7." 11 U.S.C. § 348(f)(1)(B). This amendment made Congress's intent clear. Following the 2005 amendment, a debtor no longer receives the benefit of a chapter 13 valuation or determination of an allowed secured claim upon conversion to chapter 7, as these actions taken in a chapter 13 case have no binding effect following conversion. *See generally* Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Edition, § 533.1, Sec. Rev. Mar. 29, 2006, www.Ch13online.com. Thus, upon conversion, the secured creditor is owed the full amount of its claim, less whatever payments it has received. In short, it is as if no previous valuation occurred.

Section 348(f)(1)(C) has a similar effect. The consequence of that Code section is that, upon conversion from chapter 13, a creditor's security interest will continue to be secured by its

collateral regardless of any contrary determination in the chapter 13 case, unless the creditor's claim has been paid in full during the pendency of the chapter 13 case. *See In re Lewis*, No A08-68723-PWB, 2010 WL 2025773, at *1 (Bankr. N.D. Ga. Mar. 12, 2010) (holding that the debtors could not redeem a vehicle for $0, because even though they had paid the full amount of the claim as required by the chapter 13 plan, they did not pay the contractual interest rate, and therefore did not pay the "full amount of such claim determined under applicable nonbankruptcy law"; as a result, the creditor's claim continued to be secured by the lien on the vehicle).

While Debtors' previous case was under chapter 13, Judge Waites made the determination that CSRA's claim on the credit card debt was unsecured; thus, Judge Waites determined that the amount of CSRA's allowed secured claim was $0.[2] However, Debtors failed to complete their obligations under chapter 13 and instead converted to chapter 7. Upon conversion, the determination regarding the amount of CSRA's allowed secured claim made in Debtors' chapter 13 no longer had binding effect. When Debtors subsequently received a chapter 7 discharge, they were relieved of personal liability on their obligations to CSRA. However, CSRA's liens remained unaffected, and CSRA retained an in rem claim against the debtor's property. *Coastal Fed. Credit Union v. Hardiman*, 398 B.R. 161, 183 (E.D.N.C. 2008) (quoting *In re Anderson*, 348 B.R. 652, 655 (Bankr. D. Del. 2006)); *In re Pollard*, No. 10-

---

[2] Some jurisdictions require an adversary proceeding to make determinations regarding the amount of a creditor's claim. However, in this District, security interests are often dealt with through a debtor's chapter 13 plan. This course of action was addressed in *Cen-Pen Corp. v. Hanson*, 58 F.3d 89, 94 (4th Cir. 1995), where the court stated that a plan "provides for" a lien, so as to vest title in the debtors free and clear of the lien upon confirmation of a chapter 13 plan, when it "provides for payment to the creditor in an amount equal to its security" (citing *In re Bradshaw*, 65 B.R. 556, 559 (Bankr. M.D.N.C. 1986); *In re Hines*, 20 B.R. 44, 49 (Bankr. S.D. Ohio 1982)). *See also In re Therneau*, 214 B.R. 782, 784–85 (Bankr. E.D.N.C. 1997) (finding that while some affirmative action is necessary to avoid a lien, an adversary proceeding is not required). When a chapter 13 plan is confirmed, it is binding on creditors. As a result, a creditor's security interest is properly extinguished once a debtor completes plan payments and any other obligations under his chapter 13 plan. This is not the situation in the present case. While Debtors did make some payments prior to conversion to chapter 7, Debtors did not complete their plan payments and thus did not complete their chapter 13 obligations.

17396PM, 2011 WL 576599, at *1 (Bankr. D. Md. Feb. 9, 2011); *In re Robinson*, No. 05-2338, Adv. No. 05-137, 2007 WL 433092, at *8 (Bankr. N.D. W.Va. Feb. 5, 2007). Because Debtor's obligations on both the credit card and the truck loan were secured at the time of Debtor's chapter 7 discharge by virtue of the cross-collateralization provision in the parties' security agreement and the application of sections 348(f)(1)(B) and 348(f)(1)(C)(i), CSRA continues to have in rem claims for both of these debts. As a result, CSRA's security interest survived and the collateral is subject to the full amount of CSRA's claim, less amounts paid to CSRA on the claim during the chapter 13 case.

Section 1325(a)(5)(B) provides further support for the Court's conclusion. That section provides:

> Except as provided in subsection (b), the court shall confirm a plan if – with respect to each allowed secured claim provided for by the plan –(B)(i) the plan provides that –
> (I)  the holder of such claim retain the lien securing such claim until the earlier of –
> (aa) the payment of the underlying debt determined under nonbankruptcy law; or
> (bb) discharge under section 1328; and
> (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law.

This section imposes limits on a chapter 13 plan's ability to extinguish a lien, as it provides that a holder of an allowed secured claim retains its lien until either it receives payment in the full amount of the non-bankruptcy balance or the debtor completes his plan and receives a chapter 13 discharge. Thus, if a debtor's chapter 13 plan is converted prior to the completion of the plan, the lien is retained by the lienholder to the extent recognized by nonbankruptcy law. This District's form plan clearly complies with this provision as it states, "Holders of secured claims shall retain liens to the extent provided by 11 U.S.C. § 1325(a)(5)(B)(i)." While section 1325

specifically relates to chapter 13 confirmation requirements rather than directly to the effect of conversion or dismissal, the requirement that a chapter 13 plan include language providing for a secured creditor's retention of its lien is consistent with section 348 and makes clear exactly what the law requires in the event of a conversion or dismissal from chapter 13.

CSRA indicated in its Response that it calculated the total amount of indebtedness by adding the payoff figures for the two debts at the time of the current bankruptcy filing. CSRA is entitled to the full amount of its secured claims.

## **CONCLUSION**

Debtors' Objection to Claim of CSRA is overruled. For the reasons set forth above, CSRA's claim is allowed as filed, secured in the amount of $4,821.85.

AND IT IS SO ORDERED.

**FILED BY THE COURT**
**06/02/2011**



David R. Duncan
US Bankruptcy Judge
District of South Carolina

Entered: 06/03/2011